ORIGINAL

IN THE UNITED STATES
COURT OF FEDERAL CLAIMS

MAYFLOWER HOUSING PARTNERSHIP, an Ohio Limited Partnership c/o TransCon Builders, Inc. 25250 Rockside Road Cleveland, OH 44146

Plaintiff,

v.

THE UNITED STATES OF AMERICA

Defendant.

CASE NO. 06-731 C

COMPLAINT

## I. Preliminary Statement

1. Plaintiff Mayflower Housing Partnership, an Ohio Limited Partnership ("Mayflower") brings this action for damages resulting from the failure of the United States of America, acting through the Department of Housing and Urban Development ("HUD"), to provide for automatic annual rent increases or appropriate such increases in the Contract anniversary years 2000 through 2005 for the Mayflower Manor Apartments project. Under the Housing Assistance Payment Contract ("Mayflower HAP Contract") entered into between the Akron Metropolitan Housing Authority ("AMHA") and HUD and duly assigned by AMHA to Mayflower, Mayflower is entitled to annual rent increases for the subject property more fully described herein. HUD has breached the Mayflower HAP Contract by its failure and subsequent refusal to grant the rent increases, mandated by the Mayflower HAP Contract, resulting in damages to Mayflower in the amount of at least $5,770,000.

## II. Venue

2. This Court has subject matter jurisdiction pursuant to the provisions of the Tucker Act, 28 U.S.C. § 1491, as this claim is founded upon breaches of an express contract entered into between AMHA and HUD and duly assigned to Mayflower.

## III. Parties

3. Mayflower is a limited partnership duly organized and existing under the laws of the State of Ohio.

4. Mayflower is the owner of a certain property known as the Mayflower Manor Apartments which is located at 263 South Main St., Akron, Ohio and consists of 25 studio, 181 one bedroom and 27 two bedroom units.

5. HUD is an agency of the United States of America and at all times relevant to the allegations in this Complaint was acting as an agent of the United States of America. The actions of HUD are therefore imputed to the United States of America.

## IV. Statement of Operative Facts

### A. The Mayflower HAP Contract

6. As of November 1, 1980, AMHA entered into a HAP contract with HUD for Mayflower Manor Apartments, designated the Mayflower Manor Apartments Project, HUD project number OH 12-0003-002. (See Mayflower HAP Contract attached as Exhibit A.) Said Contract was authorized under the United States Housing Act of 1937, 42 U.S.C.1437, *et seq.*, specifically 42 U.S.C. 1437f ("Section 8"), and the Department of Housing and Urban Development Act, 42 U.S.C. 3531, *et seq.*

7. Under the terms of the Mayflower HAP Contract, HUD is to provide housing assistance payments to Mayflower for units in the Mayflower Manor Apartments Project under lease by lower-income families.

8. The Mayflower HAP Contract sets forth the initial contract rent for each unit at $369 per unit per month for studio units, $402 per unit per month for one bedroom units and $463 per unit per month for two bedroom units ("Initial Contract Rent"). Included within that Initial Contract Rent was an initial difference of 20% between that rent and fair market rent for comparable unassisted units.

9. Under Section 1.6(f)(1) of the Mayflower HAP Contract, the project owner is required to submit monthly requests to HUD for housing assistance payments.

10. Section 1.8(b) of the Mayflower HAP Contract, entitled Automatic Annual Adjustments, contains a mechanism whereby the Contract Rent due Mayflower is to be increased on an annual basis and provides in full as follows:

> (1) *Automatic Annual Adjustment Factors will be determined by the Government at least annually; interim revisions may be made as market conditions warrant. Such Factors and the basis for their determination will be published in the Federal Register. These published Factors will be reduced appropriately by the Government where utilities are paid directly by the Families.*
>
> (2) *On each anniversary date of the Contract, the Contract Rents shall be adjusted by applying the applicable Automatic Annual Adjustment Factor most recently published by the Government. Contract Rents may be adjusted upward or downward, as may be appropriate; however, in no case shall the adjusted Contract Rents be less than the Contract Rents on the effective date of the Contract.*

11. Since the Mayflower HAP Contract went into effect, HUD has published AAAFs for each year.

12. Section 1.8(d) of the Mayflower HAP Contract further provides:

> (d) *Overall Limitation. Notwithstanding any other provisions of this Contract, adjustments as provided in this Section shall not result in material differences between the rents*

> *charged for assisted and comparable unassisted units, as determined by the Government; provided that this limitation shall not be construed to prohibit differences in rents between assisted and comparable unassisted units to the extent that such differences may have existed with respect to the initial Contract Rents.*

13. Under the provisions of 42 U.S.C. § 1437f(c)(1), the housing assistance payments provided by HUD are designed to reimburse the project owner for the difference between the rent called for under the Mayflower HAP Contract for each unit ("Contract Rent") and the amount paid by each leasing family.

**B. The Amendments and the Directive**

14. On September 28, 1994, Congress enacted amendments to the United States Housing Act of 1937 including amendments to 42 USCA §1437f(c)(2)(A), which limited adjustment of rents under HAP Contracts to situations where the owner demonstrates that the adjustment would not exceed comparable rents for unassisted units and required the deduction of one percent from the automatic adjustment factor ("AAAF") for units occupied by the same family("Amendments").

15. After enactment of the Amendments, HUD issued Directive 95-12 ("Directive") to implement the Amendments.

16. If existing contract rents exceeded HUD published fair market rents for the area, in order to receive an adjustment of rent, the Directive required owners to submit comparability studies showing comparable rents at least five percent more than the existing rent. The Directive limited adjustments to the sum of comparable rent and the Initial Difference.

17. The Directive also provided for deduction of one percent from the AAAF for units occupied by the same families and provided that adjustments in rent would only take effect 60 days from the date of application for same.

18. Because of its implementation of the Amendments and the Directive, HUD breached the Mayflower HAP Contract.

**Count I**

**(Breach of Contract - Annual Rent Adjustment)**

19. Mayflower realleges and reavers the allegations contained in Paragraphs 1-18 of this Complaint as if fully rewritten herein.

20. Between 1980 and 1994 the Contract Rent for Mayflower Manor Apartments was increased pursuant to the provisions of Section 1.8(b) of the Mayflower HAP Contract from $369 to $592 for studio units, from $402 to $633 for one bedroom units and from $463 to $706 for two bedroom units. There have been no increases granted since then.

21. Since the 1994 Contract Rent adjustment which established the Contract Rent recited in paragraph 20 above, the Government has published AAAFs each year.

22. Based upon the provisions of the Mayflower HAP Contract cited above, Mayflower was entitled to receive automatic Contract Rent adjustments through application of the AAAFs for the years 2000 through the date of the filing of this Complaint, which HUD, though requested, has failed to provide.

23. The failure by HUD to adjust the Contract Rents through application of the AAAFs on the Mayflower HAP Contract's anniversary dates has resulted in substantially lower housing assistance payments being made by HUD to Mayflower for the Mayflower Manor

Apartments Project since HUD's first failure to adjust fully the Contract Rent on November 1, 2000.

24. Despite Mayflower's compliance with the express provisions of the Mayflower HAP Contract, HUD continues to refuse to make retroactive rent adjustments for the years 2000 through the date of the filing of this Complaint.

25. By its actions, HUD has breached the express terms of the Mayflower HAP Contract in failing to grant fully automatic annual adjustments in the Contract Rent for the years 2000 through the date of the filing of this Complaint.

26. As a result of HUD's breach of the Mayflower HAP Contract, Mayflower has been damaged in an approximate amount of $1,731,000. Mayflower is therefore entitled to the monetary and other relief described hereinafter.

**<u>Count II</u>**

**(Breach of Contract - One Percent Reduction)**

27. Mayflower realleges and reavers the allegations contained in Paragraphs 1-26 of this Complaint as if fully rewritten herein.

28. HUD further breached the Mayflower HAP Contract by reducing the AAAF by one percent for units occupied by the same tenant for the years 2000 through the date of filing of this Complaint.

**<u>Count III</u>**

**(Declaratory Relief – One Percent Reduction)**

29. Mayflower realleges and reavers the allegations contained in Paragraphs 1-28 of this Complaint as if rewritten herein.

30. The One Percent Reduction required by the Amendments and the Directive would result in a breach of the Mayflower HAP Contract, if applied, and Mayflower requests a declaration to that effect and an order prohibiting application of such One Percent Reduction.

**Count IV.**

**(Breach of Contract - Overall Limitation-Initial Difference)**

31. Mayflower realleges and reavers the allegations contained in Paragraphs 1-30 of this Complaint as if fully rewritten herein.

32. HUD further breached the Mayflower HAP Contract by failing to make a proper determination of and allowance for "initial difference".

**Count V**

**(Breach of Contract - Overall Limitation-Material Difference)**

33. Mayflower realleges and reavers the allegations contained in Paragraphs 1-32 of this Complaint as if fully rewritten herein.

34. HUD further breached the Mayflower HAP Contract by failing to make a proper determination of and allowance for "material difference".

**Count VI**

**(Breach of Contract - Overall Limitation-Material Difference - Alternative)**

35. Mayflower realleges and reavers the allegations contained in Paragraphs 1-34 of this Complaint as if fully rewritten herein.

36. In the alternative, if HUD had not breached the Mayflower HAP Contract as alleged in paragraph 34, it breached said contract by failing to apply the appropriate Overall Limitation of 120% of the sum of comparable rent and initial difference for the years 2000 through the date of filing of this Complaint.

## Count VII

**(Breach of Contract - Comparability Studies and Time Limits)**

37. Mayflower realleges and reavers the allegations contained in Paragraphs 1-36 of this Complaint as if fully rewritten herein.

38. HUD further breached the Mayflower HAP Contract by its application of the Directive's 60-day time limit and the requirement of Mayflower to obtain comparability studies in order to obtain annual rent adjustments for the years 2000 through the date of the filing of this Complaint.

WHEREFORE, Mayflower prays that this Court award it money damages in the amount of at least $1,731,000, all additional money damages suffered by Mayflower arising out of HUD's breach of the Mayflower HAP Contract, all other money damages suffered by Mayflower from the filing of the within Complaint until entry of judgment, such additional other amounts that are proved at trial, together with pre- and post-judgment interest, attorney fees and any such declaratory and other relief that the Court deems proper.

Respectfully submitted,

Dated: 10/25/06

Fred J. Livingstone (0009528)
Mark J. Valponi (0009527)
Majeed G. Makhlouf (0073853)
TAFT, STETTINIUS & HOLLISTER LLP
3500 BP Tower
200 Public Square
Cleveland, Ohio 44114-2302
(216) 241-2838

Attorneys for Plaintiff

SECTION 8 HOUSING ASSISTANCE PAYMENTS PROGRAM
SUBSTANTIAL REHABILITATION
PART I OF THE
# HOUSING ASSISTANCE PAYMENTS CONTRACT
PRIVATE-OWNER OR PHA OWNER PROJECT

| HAP CONTRACT LIST NUMBER AND DATE: C-68-545 9/19/79 | PROJECT NUMBER: OH 12-0003-002 |
| --- | --- |

amended by C-80-179 dated 2/26/80

This Housing Assistance Payments Contract *("Contract")* is entered into by and between the United States of America acting through the Department of Housing and Urban Development *("Government")*, and AKRON METROPOLTIAN HOUSING AUTHORITY *("Owner")*, pursuant to the United States Housing Act of 1937 *("Act")*, 42 U.S.C. 1437, et seq., and the Department of Housing and Urban Development Act, 42 U.S.C. 3531, et seq.

The parties hereto agree as follows:

1.1 SIGNIFICANT DATES AND OTHER ITEMS; CONTENTS OF CONTRACT.

a. Effective Date of Contract. The effective date of this Contract is SEE EXECUTION OF CONTRACT IN STAGES, 19__. [This date shall be no earlier than the date of Government acceptance of the project.]

b. Term of Contract Where Relative Cost of Rehabilitation Is Less Than 15 Percent of Value. The term of this Contract for any unit *(see Section 1.4a, Alternative 1)* shall be 5 years [not to exceed five years], beginning with the effective date of this Contract for such unit.

c. Term of Contract Where Relative Cost of Rehabilitation Is 15 Percent or More of Value.

(1) Initial Term. The initial term of this Contract for any unit *(see Section 1.4a, Alternative 2)* shall be 5 years [not to exceed five years], beginning with the effective date of this Contract for such unit.

(2) Number and Length of Optional Additional Terms. The number and length of optional additional terms *(see Section 1.4a)* shall be 5 terms of 5 years each [not to exceed five years each].

(3) Maximum Total Term. The maximum total term of this Contract for any unit, including all renewals (see Section 1.4a) shall be 30 years. [Insert number as authorized by the Government pursuant to 24 CFR, Section 881.104, but in no event more than 20 years, or, in the case of a project owned by, or financed by a loan or a loan guarantee from, a State or local agency, the number, not to exceed 40, which will provide a term ending with the scheduled maturity date for the last payment under such financing.]

d. Fiscal Year. The ending date of each Fiscal Year *(see Section 1.4b)* shall be September 30th [insert March 31, June 30, September 30, or December 31, as determined by the Government].

e. Maximum Housing Assistance Commitment. The maximum amount of the commitment for housing assistance payments under this Contract *(see Section 1.5e)* is $ 1,133,858 per annum.

f. Minimum Percentage of Occupancy by Very Low-Income Families. In the initial renting of the Contract Units, the Owner shall lease at least 30 percent [insert 30, or lower number if authorized by the Government in accordance with 24 CFR, Section 881.117] to Very Low-Income Families *(determined in accordance with the Government-established schedules and criteria)* and shall thereafter exercise his best efforts to achieve and maintain at least 30 percent occupancy of the Contract Units by Very Low-Income Families as determined in accordance with such schedules and criteria.

g. Contents of Contract. This Contract consists of Part I, Part II, and the following exhibits:

Exhibit A: The schedule showing the number of units by size *("Contract Units")* and their applicable rents *("Contract Rents")*;

Exhibit B: The project description;

Exhibit C: The statement of services, maintenance and utilities to be provided by Owner;

Exhibit D: The Affirmative Fair Housing Marketing Plan, if applicable; and

Additional exhibits: [Specify additional exhibits, if any. If none, insert "None."]

Exhibit E: Section 11(b) Financing Cost Breakdown

This Contract, including said exhibits, comprises the entire agreement between the parties hereto with respect to the matters contained therein, and neither party is bound by any representations or agreements of any kind except as contained herein or except agreements entered into in writing which are not inconsistent with this Contract.

1.2 OWNER'S WARRANTIES.

a. Legal Capacity. The Owner warrants that he has the legal right to execute this Contract and to lease dwelling units covered by this Contract

b. Completion of Work. The Owner warrants that the project as described in Exhibit B is in good and tenantable condition and that the project has been completed in accordance with the terms and conditions of the Agreement to Enter into Housing Assistance Payments Contract *("Agreement")* or will be completed in accordance with the terms on which the project was accepted. The Owner further warrants that he will remedy any defects or omissions covered by this warranty if called to his attention within 12 months of the effective date of this Contract. The Owner and the Government agree that the continuation of this Contract shall be subject to the conditions set forth in Section 1.4f of the Agreement.

1.3 FAMILIES TO BE HOUSED; GOVERNMENT ASSISTANCE.

a. Families To Be Housed. The Contract Units are to be leased by the Owner to eligible Lower-Income Families *("Families")* for use and occupancy by such Families solely as private dwellings.

b. Government Assistance.

(1) The Government hereby agrees to make housing assistance payments on behalf of Families for the Contract Units, to enable such Families to lease Decent, Safe, and Sanitary housing pursuant to section 8 of the Act. Such housing assistance payments shall equal the difference between the Contract Rents for units leased by Families and the portion of such rents payable by Families as determined by the Owner in accordance with schedules and criteria established by the Government.





EXHIBIT A

(2) If there is an Allowance for Utilities and Other Services and if such Allowance exceeds the Gross Family Contribution, the Owner shall pay the Family the amount of such excess on behalf of the Government upon receipt of funds from the Government for that purpose.

1.4 TERM OF CONTRACT; FISCAL YEAR.

a. Term of Contract.

[Alternative provisions – incorporate alternative 1 or 2]

Alternative 1 – Where HUD has determined that the Cost of Rehabilitation Is Less Than 15 Percent of Value.

The term of this Contract for any unit shall be as stated in Section 1.1b, with no option for renewal in either party. If the project is completed in stages, this term shall be separately related to the units in each stage; Provided, however, that the total Contract term for all the stages, beginning with the effective date of the Contract with respect to the first stage, shall not exceed said Contract term plus two years.

Alternative 2 – Where HUD Has Determined that the Cost of Rehabilitation Is 15 Percent or More of Value.

The initial term of this Contract for any unit shall be as stated in Section 1.1c(1). This Contract may be renewed at the sole option of the Owner, for the number and length of additional terms stated in Section 1.1c(2), provided that the total Contract term for any unit, including all renewals, shall not exceed the number of years stated in Section 1.1c(3). Renewal shall be automatic unless the Owner notifies the Government, no later than 60 days prior to the expiration of the current term, of his intention not to renew. If the project is completed in stages, the dates for the initial term and renewal terms shall be separately related to the units in each stage; Provided, howeve that the total Contract term for all the stages, beginning with the effective date of the Contract with respect to the first stage, shall not exceed the total Contract term stated in Section 1.1c(3), plus two years. In any case where the project is owned by, or financed by a loan or loan guarantee from, a State or local agency, the housing assistance payments pursuant to this Contract with respect to any dwellin unit shall be payable over a period not to exceed 40 years.

b. Fiscal Year. The Fiscal Year for the project shall be the 12-month period ending on the date stated in Section 1.1d; Provided, however, that the first Fiscal Year for the project shall be the period beginning with the effective date of the Contract and ending on the last day of said established Fiscal Year which is not less than 12 months after such effective date. If the first Fiscal Year exceeds 12 months, the maximum total annual housing assistance payment in Section 1.5a may be adjusted by the addition of the pro rata amount applicable to the period of operation in excess of 12 months.

1.5 MAXIMUM HOUSING ASSISTANCE COMMITMENT; PROJECT ACCOUNT.

a. Maximum Housing Assistance Commitment. Notwithstanding any other provisions of this Contract *(other than paragraph b of this Section* or any provisions of any other contract between the Government and the Owner, the Government shall not be obligated to make and shall not make any housing assistance payments under this Contract in excess of the amount per annum stated in Section 1.1e; Provided, however, that this amount shall be reduced commensurately with any reduction in the number of Contract Units or in the Contract Rents or pursuant to any other provisions of this Contract.

b. Project Account. In order to assure that housing assistance payments will be increased on a timely basis to cover increases in Contract Ren or decreases in Family Incomes:

(1) A Project Account shall be established and maintained, in an amount as determined by the Government consistent with its responsibilities under section 8(c)(6) of the Act, out of amounts by which the maximum Contract commitment per year exceeds amounts paid under the Contract for any Fiscal Year. This account shall be established and maintained by the Government as a specifically identified and segregated account. To the extent funds are available in said account, the maximum total annual housing assistance payments for any Fiscal Year may exceed the maximum amount stated in paragraph a of this Section to cover increases in Contract Rents or decreases in Family Incomes *(see Section 1.8)*. Any amount remaining in said account after payment of the last housing assistance payment with respect to the project shall be applied by the Government in accordance with law.

(2) Whenever the Government approved estimate of the required Annual Contribution exceeds the maximum Contract commitment then in effect, and would cause the amount in the Project Account to be less than an amount equal to 40 percent of such maximum Contract commitment, the Government shall, within a reasonable period of time, take such additional steps authorized by section 8(c)(6) of the Act as may be necessary to carry out this assurance, including *(as provided in that section of the Act)* "the reservation of annual contributions authority for the purpose of amending housing assistance contracts or the allocation of a portion of new authorizations for the purpose of amending housing assistance contracts."

1.6 HOUSING ASSISTANCE PAYMENTS TO OWNERS.

a. General.

(1) Housing assistance payments shall be paid to the Owner for units under lease by Families in accordance with the Contract. The housing assistance payment will cover the difference between the Contract Rent and that portion of said rent payable by the Famil as determined in accordance with the Government-established schedules and criteria.

(2) The amount of housing assistance payment payable on behalf of a Family and the amount of rent payable by such Family shall be subject to change by reason of changes in Family Income, Family composition, or extent of exceptional medical or other unusual expenses, in accordance with the Government-established schedules and criteria; or by reason of adjustment by the Government of any applicable Allowance for Utilities and Other Services. Any such change shall be effective as of the date stated in a notification of such change to the Family.

b. Vacancies During Rent-up. If a Contract Unit is not leased as of the effective date of the Contract, the Owner shall be entitled to housing assistance payments in the amount of 80 percent of the Contract Rent for the unit for a vacancy period not exceeding 60 days from the effective date of the Contract, provided that the Owner (1) commenced marketing and otherwise complied with Section 1.3b of the Agreement, (2) has taken and continues to take all feasible actions to fill the vacancy, including, but not limited to, contacting applicants on his waiting list, if any, requesting the Public Housing Agency *("PHA")* and other appropriate sources to refer eligible applicants, and advertis the availability of the unit, and (3) has not rejected any eligible applicant, except for good cause acceptable to the Government.

c. Vacancies After Rent-up.

(1) If a Family vacates its unit *(other than as a result of action by the Owner which is in violation of the Lease or the Contract or any applicable law)*, the Owner shall receive housing assistance payments in the amount of 80 percent of the Contract Rent for a vacanc period not exceeding 60 days; Provided, however, that if the Owner collects any of the Family's share of the rent for this period in an amount which, when added to the 80 percent payments, results in more than the Contract Rent, such excess shall be payable to the Government or as the Government may direct. *(See also Section 1.9b.)* The Owner shall not be entitled to any payment under this subparagraph unless he: (i) immediately upon learning of the vacancy, has notified the Government of the vacancy or prospective vacancy and the reasons for the vacancy, and (ii) has taken and continues to take the actions specified in paragraphs b(2) and b(3) of this Section.

(2) If the Owner evicts a Fa[illegible] shall not be entitled to any payment under pa[illegible] unless the request for such payment is supported by a certification that (i) he gave such Family a wri[illegible] of the proposed eviction, stating the grounds and advising the Family that it had 10 days within which to present its objections to the Owner in writing or in person and (ii) the proposed eviction was not in violation of the Lease or the Contract or any applicable law.

d. Limitation on Payments for Vacant Units. The Owner shall not be entitled to housing assistance payments with respect to vacant units under this Section to the extent he is entitled to payments from other sources *(e.g., payments for losses of rental income incurred for holding units vacant for relocatees pursuant to Title I of the Housing and Community Development Act of 1974 or payments under Section 1.9b of this Contract).*

e. Government Not Obligated for Family Rent. The Government has not assumed any obligation for the amount of rent payable by any Family or the satisfaction of any claim by the Owner against any Family other than in accordance with Section 1.9h of this Contract. The financial obligation of the Government is limited to making housing assistance payments on behalf of Families in accordance with this Contract.

f. Owner's Monthly Requests for Payments.

(1) The Owner shall submit monthly requests to the Government for housing assistance payments. Each such request shall set forth: (i) the name of each Family and the address and/or number of the unit leased by the Family; (ii) the address and/or the number of units, if any, not leased to Families for which the Owner is claiming payments; (iii) the Contract Rent as set forth in Exhibit A for each unit for which the Owner is claiming payments; (iv) the amount of rent payable by the Family leasing the unit *(or, where applicable, the amount to be paid the Family in accordance with Section 1.3b(2))*; and (v) the total amount of housing assistance payments requested by the Owner.

(2) Each of the Owner's monthly requests shall contain a certification by him that to the best of his knowledge and belief (i) the dwelling units are in Decent, Safe, and Sanitary condition, (ii) all the other facts and data on which the request for funds is based are true and correct, (iii) the amount requested has been calculated in accordance with the provisions of this Contract and is payable under the Contract, and (iv) none of the amount claimed has been previously claimed or paid.

(3) If the Owner has received an excessive payment, the Government, in addition to any other rights to recovery, may deduct the amount from any subsequent payment or payments.

(4) The Owner's monthly requests for housing assistance payments shall be made subject to penalty under 18 U.S.C. 1001, which provides, among other things, that whoever knowingly and willfully makes or uses a document or writing containing any false, fictitious, or fraudulent statement or entry, in any matter within the jurisdiction of any department or agency of the United States, shall be fined not more than $10,000 or imprisoned for not more than five years, or both.

g.[1] Recoupment of Savings in Financing Cost.

(1) In the event that interim financing is continued after the first year of the term of the Contract and the debt service of the interim financing for any period of three months, after such first year, is less than the anticipated debt service under the permanent financing on which the Contract Rents were based, an amount reflecting the savings in financing cost, computed in accordance with paragraph g(2) of this Section, shall be credited by the Government to the Project Account, and withheld from housing assistance payments to the Owner. If during the course of the same year there is any period of three months in which the debt service is greater than the anticipated debt service under the permanent financing, an adjustment shall be made so that only the net amount of savings in financing cost for the year is credited by the Government to the Project Account and withheld from housing assistance payments to the Owner as aforesaid *(o[r] increased payments shall be made to the Owner on account of any net excess for the year of actual interim debt service over the anticipated debt service under the permanent financing)*. Nothing in this paragraph g shall be construed as requiring a reduction in the Contract Rents or precluding adjustments of Contract Rents in accordance with Section 1.8.

(2) The computation and recoupment under this paragraph g may be made on an annual or on a quarterly or other periodic basis, but in any event no later than as of the end of each Fiscal Year: Provided, however, that if recoupment is to be made less often than quarterly, the amounts of recoupment shall be computed on at least a quarterly basis and the funds shall be deposited in a special accoun[t] from which withdrawals may be made only with the authorization of the Government. The manner of computing the amount of recoupment shall be as follows:

(i) Determine the amount by which the interest cost for the debt service for the period in question is less than the anticipated debt service under the permanent financing on which the Contract Rents were based;

(ii) Determine what percentage the amount found under paragraph g(2)(i) of this Section is of the aggregate Contract Rents for all Contract Units for the period in question;

(iii) Apply the percentage found in paragraph g(2)(ii) of this Section to the aggregate Contract Rents for those Contract Units which are included in the Owner's claim(s) for housing assistance payments for the period in question; and

(iv) The amount found in paragraph g(2)(iii) of this Section shall be credited to the Project Account and withheld from the nex[t] housing assistance payment or payments to the Owner.

1.7 MAINTENANCE, OPERATION AND INSPECTION.

a. Maintenance and Operation. The Owner agrees (1) to maintain and operate the Contract Units and related facilities so as to provide Dece[nt,] Safe, and Sanitary housing, and (2) to provide all the services, maintenance and utilities set forth in Exhibit C. If the Government determi[nes] that the Owner is not meeting one or more of these obligations, the Government shall have the right, in addition to its other rights and reme[dies] under this Contract, to abate housing assistance payments in whole or in part.

b. Inspection.

(1) Prior to occupancy of any unit by a Family, the Owner and the Family shall inspect the unit and both shall certify, on forms pre[-] scribed by the Government, that they have inspected the unit and have determined it to be Decent, Safe, and Sanitary in accord[ance] with the criteria provided in the prescribed forms. Copies of these reports shall be kept on file by the Owner for at least three y[ears].

(2) The Government shall inspect or cause to be inspected each Contract Unit and related facilities at least annually and at such oth[er] times *(including prior to initial occupancy and renting of any unit)* as may be necessary to assure that the Owner is meeting hi[s] obligation to maintain the units in Decent, Safe, and Sanitary condition and to provide the agreed upon utilities and other servi[ces]. The Government shall take into account complaints by occupants and any other information coming to its attention in schedul[ing] inspections and shall notify the Owner and the Family of its determination.

c. Units Not Decent, Safe, and Sanitary. If the Government notifies the Owner that he has failed to maintain a dwelling unit in Decent, [Safe,] and Sanitary condition and the Owner fails to take corrective action within the time prescribed in the notice, the Government may ex[illegible]

[1] Delete this paragraph unless the project is subject to 24 CFR, Section 881.125.

any of its rights or remedies ... Contract, including abatement of housing assistance payments, even if the Family continues to occupy the unit. If, however, the Family wishes to be rehoused in another dwelling unit with section 8 assistance and the Government does not have other section 8 funds for such purposes, the Government may use the abated housing assistance payments for the purpose of rehousing the Family in another dwelling unit. Where this is done, the Owner shall be notified that he will be entitled to resumption of housing assistance payments for the vacated dwelling unit if (1) the unit is restored to Decent, Safe, and Sanitary condition, (2) the Family is willing to and does move back into the restored unit, and (3) a deduction is made for the expenses incurred by the Family for both moves.

d. Notification of Abatement. Any abatement of housing assistance payments shall be effective as provided in written notification to the Owner. The Government shall promptly notify the Family of any such abatement.

e. Overcrowded and Underoccupied Units. If the Government determines that a Contract Unit is not Decent, Safe, and Sanitary by reason of increase in Family size, or that a Contract Unit is larger than appropriate for the size of the Family in occupancy, housing assistance payments with respect to such unit will not be abated, unless the Owner fails to offer the Family a suitable unit as soon as one becomes vacant and ready for occupancy. In the case of an overcrowded unit, if the Owner does not have any suitable units or if no vacancy of a suitable unit occurs within a reasonable time, the Government will assist the Family in finding a suitable dwelling unit and require the Family to move to such a unit as soon as possible. The Owner may receive housing assistance payments for the vacated unit if he complies with the requirements of Section 1.6c(3).

1.8 RENT ADJUSTMENTS.

a. Funding of Adjustments. Housing assistance payments will be made in increased amounts commensurate with Contract Rent adjustments under this Section, up to the maximum amount authorized under Section 1.5a of this Contract.

b. Automatic Annual Adjustments.

(1) Automatic Annual Adjustment Factors will be determined by the Government at least annually; interim revisions may be made as market conditions warrant. Such Factors and the basis for their determination will be published in the Federal Register. These published Factors will be reduced appropriately by the Government where utilities are paid directly by the Families.

(2) On each anniversary date of the Contract, the Contract Rents shall be adjusted by applying the applicable Automatic Annual Adjustment Factor most recently published by the Government. Contract Rents may be adjusted upward or downward, as may be appropriate; however, in no case shall the adjusted Contract Rents be less than the Contract Rents on the effective date of the Contract.

c. Special Additional Adjustments. Special additional adjustments shall be granted, when approved by the Government, to reflect increases in the actual and necessary expenses of owning and maintaining the Contract Units which have resulted from substantial general increases in real property taxes, utility rates, or similar costs *(i.e., assessments, and utilities not covered by regulated rates)*, but only if and to the extent that the Owner clearly demonstrates that such general increases have caused increases in the Owner's operating costs which are n adequately compensated for by automatic annual adjustments. The Owner shall submit to the Government financial statements which clearly support the increase.

d. Overall Limitation. Notwithstanding any other provisions of this Contract, adjustments as provided in this Section shall not result in ma differences between the rents charged for assisted and comparable unassisted units, as determined by the Government; provided, that limitation shall not be construed to prohibit differences in rents between assisted and comparable unassisted units to the extent that differences may have existed with respect to the initial Contract Rents.

e. Incorporation of Rent Adjustment. Any adjustment in Contract Rents shall be incorporated into Exhibit A by a dated addendum to exhibit establishing the effective date of the adjustment.

f.[3] Adjustment to Reflect Actual Cost of Permanent Financing. This paragraph f shall apply if the project is not permanently financed after the effective date of the Contract. After the project is permanently financed, the Financing Agency shall submit a certification Government as to the actual financing terms. If the actual debt service under the permanent financing is lower than the anticipated service on which the Contract Rents were based, the Contract Rents currently in effect shall be reduced commensurately, and the a of the savings shall be credited to the Project Account. The maximum Contract commitment shall not be reduced. If the actual de service is higher, the Contract Rents shall not be increased.

1.9 MARKETING AND LEASING OF UNITS.

a. Compliance with Equal Opportunity. Marketing of units and selection of Families by the Owner shall be in accordance with the G Government-approved Affirmative Fair Housing Marketing Plan, shown as Exhibit D, and with all regulations relating to fair hous advertising.

b. Security and Utility Deposits.

(1) The Owner may require Families to pay a security deposit in an amount equal to one month's Gross Family Contribution Family vacates its unit, the Owner, subject to State and local law, may utilize the deposit as reimbursement for any unpai other amount owed under the Lease. If the Family has provided a security deposit, and it is insufficient for such reimbu the Owner may claim reimbursement from HUD, not to exceed an amount equal to the remainder of one month's Cont Any reimbursement under this Section shall be applied first toward any unpaid rent. If a Family vacates the unit owing other amount under the Lease or if the amount owed is less than the amount of the security deposit, the Owner shall re amount or the unused balance, as the case may be, to the Family.

(2) In those jurisdictions where interest is payable by the Owner on security deposits, the refunded amount shall include th interest payable. All security deposit funds shall be deposited by the Owner in a segregated bank account, and the bal account, at all times, shall be equal to the total amount collected from tenants then in occupancy, plus any accrued in Owner shall comply with all State and local laws regarding interest payments on security deposits.

(3) Families shall be expected to obtain the funds to pay security and utility deposits, if required, from their own resourc other private or public sources.

c. Eligibility, Selection and Admission of Families.

(1) The Owner shall be responsible for determination of eligibility of applicants, selection of families from among those be eligible, and computation of the amount of housing assistance payments on behalf of each selected Family in acc schedules and criteria established by the Government. *(See also Section 1.12)*

(2) The Lease entered into between the Owner and each selected Family shall be on the form of Lease approved by the

(3) The Owner shall make a reexamination of Family income, composition, and the extent of medical or other unusu incurred by the Family, at least annually *(except that such reviews may be made at intervals of no longer than tw*

[3] Delete this paragraph unless the project is subject to 24 CFR, Section 881.128.

*of elderly Families*, and [illegible] redetermination [illegible] the Owner [illegible] the amount of Family contribution and the amount of housing assistance payment, all in accordance with schedules and criteria [illegible] by the Government. In connection with the reexamination, the Owner shall determine what percentage of Families in occupancy are Very Low-Income Families. If there are fewer than 30 percent Very Low-Income Families in occupancy, the Owner shall report the fact to the Government and shall adopt changes in his admission policies to achieve, as soon as possible, at least 30 percent occupancy by such Families.

d. Rent Redetermination after Adjustment in Allowance for Utilities and Other Services. In the event that the Owner is notified of a Government determination making an adjustment in the Allowance for Utilities and Other Services applicable to any of the Contract Units, the Owner shall promptly make a corresponding adjustment in the amount of rent to be paid by the affected Families and the amount of housing assistance payments.

e. Processing of Applications and Complaints. The Owner shall process applications for admission, notifications to applicants, and complaints by applicants in accordance with applicable Government requirements and shall maintain records and furnish such copies or other information as may be required by the Government.

f. Government Review; Incorrect Payments. In making housing assistance payments to Owners, the Government will review the Owner's determinations under this Section. If as a result of this review, or other reviews, audits or information received by the Government at any time, it is determined that the Owner has received improper or excessive housing assistance payments, the Government shall have the right to deduct the amount of such overpayments from any amounts otherwise due the Owner, or otherwise effect recovery thereof.

1.10 TERMINATION OF TENANCY.

The Owner shall be responsible for termination of tenancies, including evictions. However, conditions for payment of housing assistance payments for any resulting vacancies shall be as set forth in Section 1.6c.

1.11 REDUCTION OF NUMBER OF CONTRACT UNITS FOR FAILURE TO LEASE TO ELIGIBLE FAMILIES.

a. After First Year Of Contract. If at any time, beginning six months after the effective date of this Contract, the Owner fails for a continuous period of six months to have at least 80 percent of the Contract Units leased or available for leasing by Families, the Government may on 30 days notice reduce the number of Contract Units to not less than the number of units under lease or available for leasing by Families, plus 10 percent of such number if the number is 10 or more, rounded to the next highest number.

b. At End of Initial and Each Renewal Term. At the end of the initial term of the Contract and of each renewal term, the Government may, by notice to the Owner, reduce the number of Contract Units to not less than (1) the number of units under lease or available for leasing by Families at that time or (2) the average number of units so leased or available for leasing during the last year, whichever is the greater number, plus 10 percent of such number if the number is 10 or more, rounded to the next highest number.

c. Restoration of Units. The Government will agree to an amendment of the Contract to provide for subsequent restoration of any reduction made pursuant to paragraph a or b of this Section if the Government determines that the restoration is justified as a result of changes in demand and in the light of the Owner's record of compliance with his obligations under this Contract and if annual contributions contract authority is available; and the Government will take such steps authorized by section 8(c)(6) of the Act as may be necessary to carry out this assurance *(see Section 1.5)*.

WARNING: 18 U.S.C. 1001 provides, among other things, that whoever knowingly and willfully makes or uses a document or writing containing any false, fictitious, or fraudulent statement or entry, in any matter within the jurisdiction of any department or agency of the United States, shall be fined not more than $10,000 or imprisoned for not more than five years, or both.

OWNER ______________________

By ______________________

______________________ *(Official Title)*

Date ______________________, 19 ___

United States of America
Secretary of Housing and Urban Development

By ______________________

______________________ *(Official Title)*

Date ______________________, 19 ___

SEE EXECUTION OF CONTRACT IN STAGES

[If the project is to be completed and accepted in stages, execution of the Contract with respect to the several stages appears on the following page of this Contract.]

STAGE 1

This Contract is hereby executed with respect to the units described in Exhibit A-1.

EFFECTIVE DATE. The effective date of this Contract is November 1, , 19 80 . [Insert date which shall be no earlier than the date of Government acceptance of the project.]

75 One Bedroom
21 Two Bedroom
96 Total Units

OWNER Akron Metropolitan Housing Authority

By [signature]

Executive Director
(Official Title)

Date March 4 , 19 81

United States of America
Secretary of Housing and Urban Development

By [signature: George T. Ray]
George T. Ray, Jr.
Service Office Supervisor
(Official Title)

Date 3-9 , 19 81

EXECUTION OF CONTRACT WITH RESPECT TO CONTRACT UNITS COMPLETED AND ACCEPTED IN STAGES
STAGE 2

This Contract is hereby executed with respect to the units described in Exhibit A-2.

EFFECTIVE DATE. The effective date of this Contract is ____________, 19____ [Insert date which shall be no earlier than the date of Government acceptance of the project.]

OWNER ____________

By ____________

____________
(Official Title)

Date ____________, 19____

United States of America
Secretary of Housing and Urban Development

By ____________

____________
(Official Title)

Date ____________, 19____

EXECUTION OF CONTRACT WITH RESPECT TO CONTRACT UNITS COMPLETED AND ACCEPTED IN STAGES
STAGE 3

This Contract is hereby executed with respect to the units described in Exhibit A-3.

EFFECTIVE DATE. The effective date of this Contract is ____________, 19____ [Insert date which shall be no earlier than the date of Government acceptance of the project.]

OWNER ____________

By ____________

____________
(Official Title)

Date ____________, 19____

United States of America
Secretary of Housing and urban Development

By ____________

____________
(Official Title)

Date ____________, 19____

**Exhibit A to this agreement was unavailable. However, the information contained thereon is as follows:**

| Size of Suite | Number | Contract Rent |
| --- | --- | --- |
| Studio | 25 | $369 |
| 1BR | 181 | $402 |
| 2BR | 27 | $463 |